UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 601 EAST 226 ST LLC,<br><br>                              **Plaintiff,**<br><br>-against-<br><br>UNITED STATES LIABILITY INSURANCE GROUP; UNITED STATES LIABILITY INSURANCE COMPANY (USLI); MOUNT VERNON FIRE INSURANCE COMPANY; U.S. UNDERWRITERS INSURANCE COMPANY; MOUNT VERNON SPECIALTY INSURANCE CO.; RADNOR SPECIALTY INSURANCE CO.; and each individually and as a joint venture transacting business under the fictitious name DEVON PARK SPECIALTY INSURANCE;<br><br>                              **Defendants.** | 24-cv-722 (ALC)<br><br>**OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

       Plaintiff 601 East 226 St LLC ("601 East") brings this insurance action against Defendants United States Liability Insurance Group ("USLI Group"), United States Liability Insurance Company ("USLI"), Mount Vernon Fire Insurance Company ("Mount Vernon Fire"), U.S. Underwriters Insurance Company ("U.S. Underwriters"), Mount Vernon Specialty Insurance Co. ("Mount Vernon Specialty"), Radnor Specialty Insurance Co. ("Radnor"), and Devon Park Specialty Insurance ("Devon Park") (collectively, "Defendants").

       Plaintiff states causes of action against USLI and Devon Park for breach of contract and declaratory relief. Plaintiff also asserts a class claim under New York's Consumer Fraud Act (codified in New York General Business Law ("GBL") Sections 349 and 350) seeking damages for deceptive practices.

1

Defendants now move to dismiss certain claims in Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons outlined below, Defendants' partial motion to dismiss the Amended Complaint is **GRANTED** in part and **DENIED** in part without prejudice.

## BACKGROUND

### I.  Factual Background

Plaintiff is a domestic limited liability company formed in New York. ECF No. 38, Amended Complaint ("Am. Compl.") ¶ 5. Defendants are all Pennsylvania-based corporations. *Id.* ¶¶ 5–12. In October 2022, Plaintiff purchased the building (then a residential property, the "premises") located at 601 E 226th Street, Bronx, New York 10466. *Id.* ¶¶ 18–20. After purchasing the property, on or about October 4, 2022, Plaintiff alleges that it contracted with Defendant Devon Park (as broker) and with Defendant USLI Group (as insurance carrier) to insure the property.[1] *Id.* ¶ 21; *see also* ECF No. 40-5.

The corresponding policy carried a $600,000 insurance limit on the property and a $125,000 limit for building improvements, each subject to a $1,000 per occurrence deductible for damage caused by covered causes of loss. Am. Compl. ¶ 21. The policy lists Defendant USLI as the issuing company. ECF No. 40-5 at 2. Romano Agency (unnamed in the Amended Complaint but based in New York) is listed as the broker. *Id.* The premises are described as a "Vacant Building with Renovation." *Id.* The insurance contract stated that Defendant USLI would provide insurance coverage and indemnification for damage to the premises, subject to certain exclusions. Am. Compl. ¶ 22.

---

[1] The Court may properly consider documents referenced in the Amended Complaint because Plaintiff relies heavily on such documents as to "render[] the document[s] 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), citing *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

At the time of purchase and at the beginning of the insurance contract, the premises were vacant due to renovations as part of a conversion of the property from a single-family home to a pediatric office. *Id.* ¶ 23. During the winter following the purchase, Plaintiff kept the heat on in the premises and did not turn it off. *Id.* ¶ 29. On or about January 8, 2023, a severe winter storm struck and some of the piping in the premises burst. *Id.* ¶¶ 24, 30. Plaintiff retained a licensed plumber who turned off the water supply. *Id.* ¶ 32. Even after this incident, Plaintiff contends that the heat remained on and was never turned off throughout the winter months. *Id.* ¶ 36. On or about January 10, 2023, Plaintiff submitted a claim for insurance coverage for a water loss due to the water pipe bursts. *Id.* ¶ 2.

Plaintiff alleges that on March 27, 2023, Defendant Devon Park issued a disclaimer letter to Plaintiff advising that, after reviewing Plaintiff's claims, insurance coverage was being disclaimed because Plaintiff had not maintained sufficient heat in the building. *Id.* ¶ 37. The letterhead on the disclaimer letter shows the logos of both USLI and Devon Park, the letter denotes USLI as the issuing company, and the footer contains URLs for both USLI.com and DEVONPARKSPECIALTY.com as well the names of all Defendants except USLI Group. *See* ECF No. 40-6 at 3.

The disclaimer letter notes that USLI retained an engineering consultant who alleged that the water leak in the premises was due to "multiple freeze bursts in the domestic water supply pipes within the ceiling above the kitchen, within the walls of the second-floor bathroom, and within the basement. Additional freeze bursts occurred in the first-floor cast-iron radiators indicative of a lack of heating water circulating in the system." *See* Am. Compl. ¶ 38; ECF No. 40-6. The consultant further stated that "[t]he failure was the result of insufficient heating within the building as confirmed by the low natural gas consumption data. The consumption was

limited to the domestic water heater that maintained the internal water setpoint." Am. Compl. ¶ 39. However, Plaintiff denies (1) turning the heat off in the premises; (2) allowing the temperature to fall below a temperature claimed by the consultant, or (3) interrupting the flow of heat to the premises before, during, or after the January 8, 2023 pipe bursts. *Id.* ¶¶ 40–42. Plaintiff now seeks declaratory relief and monetary damages due to USLI's and Devon Park's breach of their obligations to Plaintiff and its refusal to pay insurance benefits. *Id.* ¶ 50.

Plaintiff also seeks damages on its behalf under GBL Sections 349 and 350 in claims against Defendants USLI, Mount Vernon Fire, U.S. Underwriters, Mount Vernon Specialty, and Radnor, all of whom allegedly make up a joint venture operating under a fictitious name, Devon Park. *Id.* ¶ 51. Plaintiff seeks damages on its own behalf as well as for "similarly situated members of the business communities in the Bronx, and, upon information and belief, other areas, who have been traditionally discriminated against by the insurance industry and so-called mainstream business community and have thereby been hard pressed to procure insurance policies for their business endeavors." *Id.*

Plaintiff alleges that Devon Park "sought to exploit what [Devon Park] perceived to be a lack of sophistication on the part of the insurance-purchasing market in the region of the Bronx where [Plaintiff] sought to develop a center to provide pediatric urgent care and medical service center at the Premises." *Id.* ¶ 54. "This course of conduct took the form of intentionally targeting the market in which [Plaintiff] was situated by selling, collecting premiums for, and generally issuing policies of insurance that actually provided illusory or absurdly limited coverage, or which lacked critical forms of coverage of the sort that any reasonable consumer would anticipate was afforded, especially when the policies in question, as here, were advertised

and marketed as affording coverage of the sort that the language of the policies surreptitiously limited or eliminated." *Id.*

Plaintiff more specifically alleges that the insurance policies reflected "an intertwined tangle of opaque language to make it difficult even for someone with an arguably sophisticated understanding of and experience with interpreting insurance contracts to readily understand." *Id.* ¶ 56. Plaintiff also alleges that Defendants "withheld offering explanations to their insureds and/or reasonable notice that although certain types of loss were covered, the insured was obligated to satisfy an additional condition precedent, namely, to potentially prove that undefined maintenance practices and procedures had been followed but a covered incident had nonetheless occurred." *Id.* ¶ 58. Last, Plaintiff contends that the policies were unfairly administered, subjecting its insureds to aggressive investigation and assigning matters to forensic engineers for intense scrutiny without giving insureds notice or opportunity to retain their own expert.

## II.    Procedural Background

On February 1, 2024, Defendants USLI and Devon Park removed this case from the Bronx County Supreme Court where Plaintiff had filed a Complaint on January 5, 2024 against Defendants USLI and Devon Park. ECF No. 1. On February 8, 2024, Defendant USLI filed its Answer to the initial Complaint. ECF No. 5. Concurrently, Defendant Devon Park filed a letter requesting a premotion conference in anticipation of a motion to dismiss the Complaint on the basis that Devon Park was not a corporation or legal entity, but rather a fictitious name. ECF No. 6.

On February 28, 2024, the Court held a conference in which Parties discussed Defendant Devon Park's motion to dismiss and Plaintiff's contemplated motion to remand the action to state court. *See* ECF No. 10. In a subsequent conference on March 22, 2024, the Court also

encouraged settlement discussions and asked the Parties to inform the Court of the pendency of any contemplated motions. *See* ECF Nos. 12, 14.

Plaintiff did not move to remand to state court and the Parties did not reach a settlement. Rather, on May 17, 2024, Plaintiff sought leave to file a motion for summary judgment. ECF No 25. On May 21, 2024, Defendants USLI and Devon Park opposed the request. Following a June 27, 2024 conference, the Court denied Plaintiff's request and set forth deadlines for the filing of Plaintiff's Amended Complaint and for a briefing schedule for Defendant Devon Park's motion to dismiss the Amended Complaint. *See* ECF No. 34.

On July 11, 2024, Plaintiff filed an Amended Complaint, which now named the additional Defendants featured in this case. ECF No. 38. On August 2, 2024, Defendants filed their motion to dismiss the Amended Complaint and supporting memorandum of law. ECF Nos. 40, 41 ("Def. Br."). On September 9, 2024, Plaintiff filed its response.[2] ECF No. 44; *see also* ECF No. 46-1 ("Pl. Opp."). On October 2, 2024, Defendants filed their reply. ECF No. 45 ("Def. Reply").

## STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556

---

[2] Plaintiff erroneously filed its opposition without tables of content and authorities and, additionally, the brief misattributed a quote. ECF No. 46. The Court accepted Plaintiff's error as inadvertent and granted leave for Plaintiff to submit a corrected version of its opposition. ECF No. 47. The corrected version was filed as Exhibit 1 to Plaintiff's October 2, 2024 letter motion. *See* ECF No. 46-1. The Court hereinafter cites to ECF No. 46 when referencing Plaintiff's opposition.

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679.

A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court's function on a motion to dismiss "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## DISCUSSION

Defendants seek dismissal of (1) all claims and allegations against USLI Group, Mount Vernon Fire, U.S. Underwriters, Mount Vernon Specialty, Radnor, and Devon Park; (2) Plaintiff's claims that Defendants violated GBL Sections 349 and 350; (3) all claims and allegations that Defendants acted as a joint venture; and (4) 601 East's demands to recover (i) damages for any diminution in value of the property; (ii) consequential damages; (iii) attorney's fees and costs incurred in bringing this action; and (iv) the cost of investigation, analysis, and consultation fees expended in connection with evaluating the defects outlined in this complaint, for purposes of determining the nature and extent of such defects.

The Court first considers whether any Defendant is a fictious entity, in which case they would be terminated from this suit. The Court next considers Plaintiff's class claims under GBL Sections 349 and 350. Last, it addresses Plaintiff's other demands for relief.

### I.     USLI Group and Devon Park Are Trade Names and Therefore Cannot Be Sued

Defendants argue that USLI Group and Devon Park are fictitious trade names and therefore cannot be sued individually. The Court agrees. "Under the New York Constitution, 'all corporations shall have the right to sue and shall be subject to be sued in all courts in like cases as natural persons.'" *Thompson v. Jamaica Hosp. Med. Ctr.*, No. 13-CV-1896, 2016 U.S. Dist. LEXIS 116985, *14 (S.D.N.Y. Aug. 30, 2016), quoting N.Y. Const. Art. 10 § 4. "However, a plaintiff cannot bring an action against a business operating under a trade name." *Id.* (citing *Kingvision Pay-Per-View, Ltd. v. Nunez*, No. 05-CV-2931, 2007 WL 2815751, at *4 (E.D.N.Y. Sept. 25, 2007); *Ragin v. Harry Macklowe Real Estate Co.*, 126 F.R.D. 475, 480 (S.D.N.Y. 1989); *Provosty v. Lydia E. Hall Hosp.*, 91 A.D.2d 658, 659 (2d Dep't 1982); *Marder v. Betty's Beauty Shoppe*, 38 Misc.2d 687, 687–88 (2d Dep't 1962). The Court takes judicial notice of public records indicating that USLI Group and Devon Park are fictitious names, registered in 2000 and 2015 respectively.[3]

To the extent Plaintiff seeks to pursue its breach and declaratory relief claimS against Devon Park, the Court also takes judicial notice of the insurance policy and denial letter, finding that Plaintiff's allegations of Devon Park's involvement are misleading on the face of the

---

[3] The Court may take judicial notice of these public records to establish their existence. *See Singleton v. Fifth Generation, Inc.*, 15-CV-474, 2016 WL 406295, at *3 (N.D.N.Y. Jan. 12, 2016) (label registration and approval documents were suitable for notice because they were matters of public record and no party disputed their authenticity or accuracy); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Courts routinely take judicial notice" of documents retrieved from official government websites (citing cases)). USLI Group and Devon Park both appear on the Pennsylvania Department of State online business search portal (*available at* https://file.dos.pa.gov/search/business) and, for each entity, the term "Fictitious Name" appears under the header "Entity Type."

Complaint and the referenced materials. The insurance policy plainly denotes USLI as the insurer and specifies that the broker is Romano Agency, not Devon Park. *See* ECF No. 40-5 at 2. There is no mention of Devon Park serving as the broker for this policy. The coverage denial letter and accompanying email similarly indicate that (1) the property claims examiner worked for USLI; (2) USLI was the issuing company; (3) USLI hired an adjuster to investigate the claim; (4) USLI hired an engineer; and (5) the engineer prepared their report for USLI. *See* ECF No. 40-6 at 2–7. Devon Park appears on the letterhead, but there is no indication that Devon Park issued the disclaimer letter. *Id.* at 2.

The Court concludes that USLI and Devon Park cannot be sued as individual defendants. Moreover, to the extent Plaintiff intends to group the remaining Defendants as a joint venture, it must limit this theory only to the GBL claims as the Court explains in the following section.

## II.     Plaintiff's GBL Claims Survive as to All Remaining Defendants

Plaintiff's claims arise under Sections 349 and 350 of the GBL. Section 349 of the GBL provides a cause of action for any person injured by "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law. § 349(a), (h). "'Deceptive acts' are acts that are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce," and is analyzed under the same "reasonable consumer" standard as Section 349. *Id.* (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section

349, and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (internal quotation marks and citations omitted).

To assert a claim under Sections 349 or 350 of the GBL, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). These claims are "not subject to the pleading-with-particularity requirements of Rule 9(b)" and "need only meet the [ordinary pleading] requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005); *accord Velez v. Lasko Prod., LLC*, No. 1:22-cv-08581, 2023 WL 8649894, at *2 (S.D.N.Y. Dec. 14, 2023).

Defendants argue that Plaintiff's GBL claims are not based on consumer-oriented conduct, but rather "premised on nothing more than USLI's allegedly improper denial of coverage under the Policy for the water damage that occurred at the Premises." ECF No. 41 at 10. Indeed, private contractual disputes stand "in contrast to the consumer-oriented, deceptive conduct aimed at the public at large that General Business Law § 349 is designed to address[.]" *Zawahir v. Berkshire Life Ins. Co.*, 804 N.Y.S.2d 405, 407 (N.Y. App. Div. 2d Dep't 2005).

Defendants point to an ostensibly similar case, *Fishberg v. State Farm Fire & Cas. Co.* No. 20-CV-6664, 2021 WL 3077478 (S.D.N.Y. July 20, 2021), where Judge Liman considered nearly identical facts. In that case, premises rented by a plaintiff were insured by the defendant. *Id.* at *1. The premises suffered substantial damage from a ceiling collapse and subsequent water leak, and some of plaintiff's property was damaged or rendered useless. *Id.* After plaintiff filed a claim, the defendant denied coverage for the loss. *Id.* The plaintiff asserted actions for (1) breach; (2) the defendant's failure to timely investigate and adjust the claim in good faith; (3)

unfair and deceptive acts and practices in violation of GBL Section 349; and (4) willful and wanton misconduct entitling the plaintiff to punitive damages. *Id.* at *2. With respect to the GBL claims, Judge Liman explains:

> Plaintiff's claim is no different than those which have been held by courts in this Circuit to be insufficient to state a claim under Section 349. Plaintiff alleges that Defendant maintains a publicly accessible website describing its renters insurance and then **states in conclusory terms that the language it conveys regarding the coverage of the policy** with respect to damage from "windstorms, hail, and water damage from plumbing" **would lead a reasonable person to understand that the policy would cover losses such as that sustained by Plaintiff**. Dkt. No. 26 ¶¶ 43-44. **However, Plaintiff does not allege what precisely the loss he suffered is and what language on the website would lead a reasonable consumer to believe that the insurer would automatically agree to extend coverage to an insured upon notice of claim without determining for itself whether the loss was covered or not**. . . . Nor has Plaintiff alleged that there is anything universal or general about its dispute with Defendant. **It merely makes the conclusory and insufficient "information and belief" allegation that Defendant's "offending practice is not an isolated incident, but a consumer-oriented and routine practice that has affected many similarly situated insureds, and does, or has the potential to, affect the public at large."** Dkt. No. 26 ¶ 56. The same generalized statement, lacking any factual support, could be made in any insurance dispute. Plaintiffs' allegations set forth a contractual disagreement as to whether coverage for the noticed loss is required.

*Id.* at *4–5 (emphasis added). Plaintiff here similarly relies almost entirely on "information and belief" and some of the allegations are conclusory.

But unlike the plaintiff in *Fishberg*, Plaintiff pleads sufficient factual allegations, however threadbare, that satisfy the GBL elements at the pleading stage: (1) consumer-oriented conduct (Defendants targeted people beyond Plaintiff and in wider areas) that is (2) materially misleading (Defendants deceptively drafted policies that provided illusory or absurdly limited coverage that a reasonable consumer would anticipate was afforded) and that (3) Plaintiff suffered injury as a result of the allegedly deceptive act or practice (Plaintiff paid premiums but did not get the benefit of their bargain and now must pay

11

legal costs due to Defendants' conduct). As a result, Plaintiff's GBL claims pass muster, at least at the pleading stage.

The Court must now consider Defendants' position against Plaintiff's joint venture theory in order to determine whether the GBL claims extend to all remaining Defendants. But here, too, Plaintiff has put forth insubstantial—but still plausible— allegations that as part of a "deceptive and unscrupulous scheme . . . Defendants conducted business as a joint venture to implement this plan" in part "by combining their resources, skills, knowledge, marketing personnel, and Internet presence[.]" Am. Compl. ¶¶ 72–73. "At this early prediscovery phase, these allegations sufficiently plead violations of General Business Law § 349. The battle over whether plaintiff can meet her obligation of a threshold showing that [her] claim was predicated upon a deceptive act or practice that was consumer oriented is best reserved for a motion for summary judgment after discovery." *Skibinsky v. State Farm Fire & Cas. Co.*, 775 N.Y.S.2d 200, 201–02 (2004) (cleaned up). The GBL claims therefore survive as to all Defendants.

For the avoidance of doubt, however, the Court declines to consider the joint liability theory as to the Plaintiff's property damage claim. In the Complaint, Plaintiff only alleged that USLI and Devon Park (both now terminated as Individual Defendants) were liable for the breach and declaratory relief claims. Plaintiff appears to raise joint and several liability with respect to the claim itself—and not just as to deceptive practices—for the first time in their opposition. The Court agrees with Defendants that this partnership by estoppel theory is impermissible. *See* Def. Reply at 6 (citing *Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 Fed. Appx. 17, 20 (2d Cir. 2020) (holding that the District Court properly granted defendant's motion to dismiss

because plaintiff was not permitted to advocate a new theory of liability through its opposition brief). The Court thus only considers the joint venture theory as to the GBL claims.

### III.     Plaintiff's Remaining Claims Are Dismissed

All that is left are Plaintiff's claims against the remaining Defendants under GBL 350 and Plaintiff's requests under its diminution of value theory; special or consequential damages; attorney's fees and litigation costs; and costs and investigation in connection with evaluating the defects in its complaint. Plaintiff did not respond to Defendants' opposition to any of these arguments, so these claims are dismissed without prejudice. See *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed").

### IV.     Leave to Amend

Last, the Court grants Plaintiff leave to file a Second Amended Complaint. Plaintiff could presumably plead facts that cure the Amended Complaint's defects. Because this case "is still in its infancy, there would be minimal prejudice to Defendant[s]" in granting leave to amend. *Morales v. Kimberly-Clark Corp.*, No. 18-CV-7401, 2020 WL 2766050, at *10 (S.D.N.Y. May 27, 2020).

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss the Amended Complaint is **GRANTED** in part and **DENIED** in part without prejudice  The Court grants Plaintiff leave to file a Second Amended Complaint and ORDERS Plaintiff to file their Amended Complaint in thirty (30) days. If Plaintiff fails to do so or does not wish to file a Second Amended Complaint,

13

the Court will order Defendants to file their Answer to the Amended Complaint in a separate order.

**SO ORDERED.**

**Dated:**    **New York, New York**
              **March 27, 2025**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**